IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARISOL COLÓN-DIAZ,

    Plaintiff,

    v.

DEPARTMENT OF EDUCATION, et al.,

    Defendants.

Civil No. 09-1564 (JAG/BJM)

## REPORT AND RECOMMENDATION

Plaintiff Marisol Colón-Diaz ("Colón") brings this action against the Department of Education of the Commonwealth of Puerto Rico ("Department" or "defendant") and others for damages arising under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Puerto Rico law. (Docket No. 1). Plaintiff's motion for entry of default as to the Department was granted (Docket No. 9) and plaintiff's motion for default judgment (Docket No. 11) was referred to me for a hearing and report and recommendation. (Docket No. 12). At a default damages hearing held on March 23, 2010, Colón, Maribel Rivera-Rivera ("Rivera"), and Dr. Victor J. Lladó provided testimony and plaintiff offered exhibits into evidence. (Docket No. 17). Defendants did not appear at the hearing. (Id.).

## BACKGROUND

According to the complaint, in July 2003, Colón was hired as an administrative secretary at the Service Center of Special Education ("Center") in Morovis, Puerto Rico, which is part of the Department. (Docket No. 1, ¶ 14). The Center's director, Viviana Hernández de Navas ("Hernández"), was plaintiff's immediate supervisor. (Id., ¶ 15). Colón was diagnosed with severe depression in 2000, and this condition was well known to the Department. (Id., ¶¶ 16-17).

In January and February 2007, Colón sent written complaints to Hernández and the Department alleging ongoing mistreatment and hostile behavior towards her by supervisors Maria M. Ortiz Mojica ("Ortiz") and Leslie Gonzalez Mendoza ("Gonzalez"). Colón stated that their

Case 3:09-cv-01564-JAG-BJM   Document 21   Filed 06/08/10   Page 2 of 18

**Marisol Colón-Diaz v. Department of Education, et al.**                                               Page 2
Civil No. 09-1564 (JAG/BJM)
**REPORT AND RECOMMENDATION**

conduct was affecting her emotional condition and that she feared losing her job for filing the complaints. (Id., ¶¶ 18, 20, 22). As a result of the hostile conduct, Colón became distressed and received psychological counseling. On February 1, 2007, she filed a claim with the State Insurance Fund ("SIF"), prompting reprisals against her by Hernández, who had ordered her not to report the claim. (Id., ¶¶ 19, 23). Although the Department ordered Hernández on February 2, 2007 to work on Colón's internal claim, the three supervisors' conduct worsened. They accused Colón of insubordination, threatened her with legal action for filing the internal complaints, and treated her indifferently in front of her coworkers. She began to be closely monitored at work, unlike other employees, and she had to file reports and obtain prior authorizations that were not previously required. (Id., ¶¶ 24-27, 31). Colón became scared of losing her job, and her further complaint to the Department in April 2007 fell on deaf ears. (Id., ¶¶ 28-30).

On October 8, 2007, Hernández called a meeting of all employees except Colón at which Hernández circulated an unsigned letter that included, among other false statements, accusations against Colón of alcoholism, prostitution, anorexia, narcissism, depression, mental illness, and venereal disease. (Id., ¶¶ 32-33; see also Docket No. 18, Exh. 1). At the meeting, Hernández also discussed confidential, private information about Colón's emotional and medical conditions. (Docket No. 1, ¶ 34). The Department ignored repeated notifications about the situation. On November 5, 2007, Colón filed a charge of discrimination against the Department with the Equal Employment Opportunity Commission ("EEOC"). The reprisals against plaintiff immediately became more constant and intense. (Id., ¶¶ 35, 37-38; see also Docket No. 18, Exh. 2).

Hernández appointed Gonzalez to record Colón's work starting on October 23, 2007. (Docket No. 1, ¶ 36). In November 2007, after the filing of the EEOC charge, Hernández and Gonzalez added new, unreasonable tasks not inherent to Colón's position and pressured her to complete these tasks. Hernández would also order Colón to do the same work over and over again in order to harass and oppress her because of her mental condition. (Id., ¶¶ 39-40, 42). Colón's main duties and responsibilities were eliminated, she was subjected to neglect and false complaints,

Case 3:09-cv-01564-JAG-BJM   Document 21   Filed 06/08/10   Page 3 of 18

**Marisol Colón-Diaz v. Department of Education, et al.**                                          Page 3
Civil No. 09-1564 (JAG/BJM)
**REPORT AND RECOMMENDATION**

her status at work was adversely affected, and she was isolated from and constantly humiliated in front of the other employees, who refused to talk to her. (Id., ¶¶ 41-42). This pattern of retaliatory and harassing conduct increased after Colón filed another internal complaint about Hernández with the Department on December 3, 2007. (Id., ¶¶ 43-45, 48). In January 2008, Colón was also punished by Hernández and Gonzalez for her union activities, in violation of the union's collective agreement. (Id., ¶¶ 46-47). The same month, Colón filed yet another complaint with the Department, to no avail. (Id., ¶ 49). By March 2008, the pattern of harassment and false accusations continued, aggravating Colón's emotional condition to the point that she was hospitalized at First Hospital Panamericano. (Id., ¶¶ 50-54). In May 2008, Colón filed a charge of retaliation with the EEOC about the continuing reprisals and the emotional toll they were taking on her. (Id., ¶ 55).

The instant action followed in June 2009. Plaintiff brings claims under the ADA anti-discrimination and anti-retaliation provisions and their respective local counterparts, Act No. 44 of July 2, 1985, 1 L.P.R.A. §§ 501-511b ("Law 44"), and Act No. 115 of December 20, 1991, 29 L.P.R.A. §§ 194-194b ("Law 115"). Plaintiff also brings claims for defamation and invasion of privacy under Puerto Rico's general tort statute, Article 1802 of the Civil Code, 31 L.P.R.A. § 5141. The court granted entry of default on these claims and held a damages hearing. (Docket No. 9, 17).

At the hearing, the following exhibits were marked and admitted into evidence: (1) a copy of the defamatory letter circulated to Center employees by Hernández (the "Letter") (Docket No. 18, Exh. 1); (2) plaintiff's November 5, 2007 EEOC charge against defendant (id., Exh. 2); and (3) Dr. Lladó's undated forensic psychiatric report evaluating plaintiff. (Id., Exh. 3).

The witnesses provided testimony about Colón's health and emotional problems resulting from her harassment at work. Colón testified that when she was first hired, she was totally stable and had not received medical treatment since 2000. At work she was productive, cooperative, and focused, and she enjoyed her job. She testified that the hostility she suffered after filing her first internal complaint made her feel anxious. She feared losing her job, could not sleep or eat, and began having panic attacks. In 2007, she missed 19 days of work to receive psychiatric treatment

Case 3:09-cv-01564-JAG-BJM   Document 21   Filed 06/08/10   Page 4 of 18

**Marisol Colón-Diaz v. Department of Education, et al.**                                                         Page 4
Civil No. 09-1564 (JAG/BJM)
**REPORT AND RECOMMENDATION**

and started taking antidepressant, anti-anxiety, and sleep medications. She was hospitalized in May 2007 for severe depression with psychosis, anxiety, and panic attacks, and was kept partially hospitalized the following month because she was unstable. She was discharged from treatment by the SIF in September 2007.

Colón testified that the Letter changed her life: it made her the butt of jokes by her friends and coworkers, and she felt crushed, humiliated, and ridiculed. After filing the November 2007 EEOC charge, Colón experienced retaliation through December 2008, causing her again to fear losing her job. She suffered excessive weight loss, chest pains, and difficulty breathing, as well as frequent diarrhea, headaches, and panic attacks. She received psychological and psychiatric treatment and the dosage of her medications was increased, but she was still unable to sleep or eat. Her psychologist referred her to Panamericano Hospital in April 2008 because she was having suicidal thoughts, then to San Juan Capestrano Hospital the following month for continued treatment and stabilization. Colón lost her job early in 2010 due to the implementation of Law No. 7 of March 9, 2009. She testified that the harassment at work changed her life: she is not the same person she was; she does not feel mentally strong enough to find another job; she still receives medical treatment, but cannot sleep well and has not yet regained her lost weight. She testified that she did not suffer from any non-work-related stress in 2007 or 2008 that could have contributed to her emotional state.

Colón's coworker Rivera testified that she has known Colón since plaintiff began working at the Center, where Rivera was a clerk. Rivera saw Colón daily at work, as their desks were next to each other's. When they first met, Rivera found Colón responsible, punctual, helpful, cooperative, and friendly. Rivera testified that when the situation with Hernández began in 2007, Colón became extremely nervous, stopped eating, lost weight, and suffered from panic attacks. Rivera saw Colón in that condition until Rivera was transferred from the Center in June 2008, though they kept in touch after that. Rivera testified that the change in Colón was drastic: Colón now lacks the sense of trust she used to have and is very fearful and anxious.

Dr. Lladó, who specializes in occupational psychiatry, testified about his forensic psychiatric evaluation of Colón's alleged emotional damage.[1] According to Dr. Lladó, Colón's history of depression began in 1994. She had been hospitalized in 1999 after suicidal behavior but was able to recover without treatment between 2000 and 2007.[2] Dr. Lladó stated that Colón's alleged treatment at work would be devastating to any normal person and even more traumatic for someone with a history of an emotional condition. In Dr. Lladó's opinion, Colón's two work problems – one, the Letter and its secondary effects on her image at work and her coworkers' treatment of her, and two, the retaliation for complaining, particularly after the first EEOC charge – caused her severe emotional trauma in 2007. She had no history of any other traumatic events, her treatment records indicate a relationship between the onset of her symptoms and her pressures at work, and her multiple hospitalizations within a short time show the severe degree of her psychological problems.

Dr. Lladó testified that when he treated Colón in late 2009, she appeared more in control and her symptoms of depression and anxiety were attenuated but still appreciable. In his opinion, while Colón has responded well to treatment, she has not fully recovered and her recuperation will require intensive treatment. She will continue to need regular treatment and medication for life, as she is at high risk for recurrences. Her prognosis is good given optimal conditions of no environmental stress, continued treatment and medication, and vigilant monitoring.[3]

Plaintiff seeks the following amounts and forms of damages: (1) compensatory damages for emotional anguish and loss of reputation caused by disability discrimination, in an amount not less

---

[1] In his report, Dr. Lladó states that he made the evaluation on the basis of in-person interviews with plaintiff in November and December 2009, the complaint in the instant case, the Letter, psychotherapeutic records of plaintiff's clinical psychologist, and records of plaintiff's three psychiatric hospitalizations at San Juan Capestrano Hospital in May 2007 and May 2008. (Docket No. 1, Exh. 3).

[2] Dr. Lladó testified that Colón's records of medication and treatment between 1999 and 2007 were not made available to him, but that Colón had said she was not treated during that period.

[3] Dr. Lladó noted that Colón's condition, while not disabling, is chronic, so according to the medical literature her depression could recur in the future even without stressors.

than $500,000.00; (2) compensatory damages for mental anguish caused by retaliation plus doubling of damages and attorney's fees pursuant to Law 115, in an amount not less than $500,000.00; (3) compensatory damages for emotional anguish and loss of reputation caused by the defamation and invasion of her privacy, in an amount not less than $1,000,000.00; (4) punitive damages in an amount plaintiff asks to be determined at trial. (Docket No. 1).

## DISCUSSION

### I. Standard of Review

The default of a defendant constitutes an admission of all facts well-pleaded in the complaint. Banco Bilbao Vizcaya Argentaria v. Family Restaurants, Inc., 285 F.3d 111, 114 (1st Cir. 2002). A default judgment based on the well-pleaded allegations in a complaint establishes only the defendant's liability, and it is then "incumbent upon the plaintiffs to establish the extent of the damages resulting from the defendant's violations." Eisler v. Stritzler, 535 F.2d 148, 153-4 (1st Cir. 1976). "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 10A Wright, Miller & Kane, Fed. Prac. & Proc. Civ. 3d § 2688. When the amount of damages are in dispute or are not ascertainable from the pleadings, a district court should hold a hearing after default to determine the amount of the award. Graham v. Malone Freight Lines, Inc., 314 F.3d 7, 16 (1st Cir. 1999).

Before awarding damages here, I must determine the following: (1) whether plaintiff has stated a disability discrimination claim under the ADA or Puerto Rico law; (2) whether plaintiff has stated a claim for retaliation under the ADA or Puerto Rico law; (3) whether plaintiff has stated claims under Puerto Rico law for defamation and invasion of privacy; and (4) whether damages are available under Puerto Rico defamation law for emotional distress.

### II. Analysis

#### A. Hostile Environment Under the ADA and Puerto Rico Law 44

Colón first seeks damages on a claim that she was subjected to a hostile work environment

Case 3:09-cv-01564-JAG-BJM Document 21 Filed 06/08/10 Page 7 of 18

**Marisol Colón-Diaz v. Department of Education, et al.**   Page 7
Civil No. 09-1564 (JAG/BJM)
**REPORT AND RECOMMENDATION**

because she was regarded as having a mental impairment that substantially limited her ability to work. (Docket No. 1, ¶¶ 56-60). She alleges that she was diagnosed with severe depression in 2000, that her depression is well known to defendant, and that Ortiz, Mendoza, and Hernández mistreated her and engaged in hostile and aggressive conduct towards her. Such conduct includes Hernández's dissemination of the Letter, which mentions Colón's depression, and Hernández's discussion of Colón's emotional and health condition at the October 8, 2007 meeting. Colón also alleges that she was closely monitored and her work closely scrutinized after she began reporting the supervisors' hostile actions, and that she was ordered "to do the same work over and over again in order to harass and oppress her because of her mental condition." (Docket No. 1, ¶¶ 16-34, 42). The court must determine whether these facts adequately state a claim for hostile environment under the ADA or Law 44.

To state a hostile environment claim, Colón must allege facts sufficient to make out a plausible entitlement to relief. Fed. R. Civ. P. 8(a)(2); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 559 (2009); Ashcroft v. Iqbal, — U.S. —, 129 S.Ct. 1937, 1953 (2009). As a threshold matter, then, she must sufficiently allege that she suffers from a disability. The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff must, therefore, adequately allege (1) that she suffers from a physical or mental impairment, (2) that the life activity allegedly impaired qualifies as "major" under the regulations, *e.g.*, "caring for oneself, performing minimal tasks, walking, seeing, hearing, speaking, breathing, learning, and working," 29 C.F.R. 1630.2(I), and (3) that "the limit imposed on the plaintiff's major life activity is substantial." Rolland v. Potter, 492 F.3d 45, 48 (1st Cir. 2007).

The term "substantially limits" "suggests [a limitation that is] 'considerable' or 'to a large degree.'" Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 196 (2002), *superseded by*

*statute*, ADA Amendments Act of 2008, Pub. L. No. 110-325 (2008).[4] Unique to the major life activity of working, the phrase "substantially limits" requires that in order to state a claim, a plaintiff must show an inability to work in a "broad range of jobs," rather than a specific job. Sutton v. United Air Lines, Inc., 527 U.S. 471, 492 (1999), *superseded by statute*, ADA Amendments Act of 2008, Pub. L. No. 110-325 (2008). In determining whether a plaintiff was substantially limited in a major life activity, the court must also consider the nature and severity of the impairment, the duration or expected duration of the plaintiff's impairment, and the permanent or long-term impact resulting from the impairment. 29 C.F.R. § 1630.2(j)(2)(ii)-(iii).

Plaintiff's complaint, which alleges that Colón "was subjected to a hostile environment due to her disability," states that she has been diagnosed with severe depression since the year 2000. (Docket No. 1, ¶¶ 16, 57). However, beyond that statement, the complaint does not plead facts about her condition's nature, severity, duration, or impact sufficient to enable the court to find that her depression constituted a substantial limitation. Indeed, the complaint is almost totally devoid of any allegations that Colón's depression limited her ability to work (or any other major life activity) to any degree. The closest the complaint comes are its statements that "knowing plaintiff's emotional state, a nervous breakdown was the evident result" of plaintiff's mistreatment and that "[t]he situation was so detrimental for the plaintiff that [she] has been hospitalized at First Hospital Panamericano." (Id., ¶¶ 44, 54). Even under Rule 8's liberal pleading standard and drawing the inference that plaintiff's depression, not the mistreatment, was the cause of her "nervous breakdown" and hospitalization, plaintiff has not shown that her ability to work was substantially limited. Furthermore, the complaint nowhere alleges that plaintiff's depression made her unable to work in a broad range of jobs as required by Sutton, much less her particular job. In short, the complaint

---

[4] The ADA Amendments Act of 2008, Pub. L. No. 110-325 (2008), expanded the definition of "disability" from the strict requirements laid out in Toyota. However, the Act is inapplicable to the instant case as it is not retroactive and the time period at issue precedes the Act's effective date of January 1, 2009. See Thornton v. United Parcel Serv., Inc., 587 F.3d 27, 34 n.3 (1st Cir. 2009).

**Marisol Colón-Diaz v. Department of Education, et al.**                                                    Page 9
Civil No. 09-1564 (JAG/BJM)
**REPORT AND RECOMMENDATION**

does not state a plausible claim that Colón had, or had a record of, a mental impairment that substantially limits a major life activity.

Nor do the complaint's allegations make it plausible that Colón was "regarded as having such an impairment." 42 U.S.C. § 12102(1)(C). An individual meets the requirement of "being regarded as having such an impairment" if "the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). An individual may be regarded as disabled under the ADA if the employer "mistakenly believes that [the] person has a physical [or mental] impairment that substantially limits one or more major life activities" or "mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." Sutton, 527 U.S. at 489. However, a plaintiff claiming to be regarded as disabled "cannot merely show that his employer perceived him as somehow disabled; rather he must prove that the employer regarded him as disabled within the meaning of the ADA." Bailey v. Georgia-Pacific Corp., 306 F.3d 1162, 1169 (1st Cir. 2002). As such, a plaintiff must show her employer perceived her to be substantially limited in the major life activity of working, and so "must show that [s]he was perceived as being unable to work in either a class of jobs or a broad range of jobs in various classes as compared with the average person having comparable training, skills, and abilities." Id. at 1169-70.

Plaintiff's complaint falls far short of this showing. The complaint alleges that plaintiff's mental condition was known to the Department (Docket No. 1, ¶ 17), and that at the October 2007 meeting, Hernández made comments about Colón's emotional and health condition and circulated the Letter containing allegations that Colón suffers from alcoholism, anorexia, depression, venereal disease, and mental sickness. (Id., ¶¶ 33-34). While enough to allege that Colón's supervisors believed Colón had some physical or mental condition, these allegations do not show that Colón's supervisors thought Colón's depression (or any other condition) substantially limited her major life activity of working. The complaint's allegations that the hostile conduct against plaintiff was "aimed

at causing her a nervous breakdown so that she won't be able to return to work" and that Colón "is regarded as having a mental impairment that substantially limited her ability to work" (Docket No. 1, ¶¶ 53, 58) are mere conclusory statements insufficient to show plaintiff's entitlement to relief. Iqbal, — U.S. at —, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 555).

In sum, Colón's complaint does not allege facts sufficient to show that she suffers from a disability by any of the ADA's definitions of that term. Therefore, the complaint fails to state a claim for hostile environment under the ADA. As to Colón's Law 44 claim, since the elements required to satisfy a claim pursuant to Law 44 mirror those required to satisfy a claim pursuant to the ADA, the court applies case law governing the application of ADA standards to claims under Law 44. 1 L.P.R.A. § 504; Rivera Concepcion v. Puerto Rico, 682 F. Supp. 2d 164, 174 (D.P.R. 2010). Accordingly, for the same reasons stated above, the complaint also fails to state a claim under Law 44. Therefore, Colón cannot recover damages on this cause of action.

### B. Retaliation Under the ADA and Law 115

Colón next seeks damages based on defendant's alleged retaliatory actions. The complaint alleges that after Colón filed administrative complaints with the Department and a discrimination charge with the EEOC, she immediately began experiencing constant, intense reprisals from supervisors Hernández and González. Colón alleges that they retaliated against her by eliminating her main duties, assigning her new and unreasonable tasks that had never been required prior to the filing of the charge, isolating her from her coworkers and humiliating her in front of them, neglecting her, and issuing false complaints against her. (Docket No. 1, ¶¶ 37-42). The court must determine whether these allegations sufficiently state a claim for retaliation under the ADA or Puerto Rico law.

The ADA prohibits discrimination against an individual "because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). An individual may assert a claim for retaliation under the ADA even if the underlying claim of disability fails. Mesnick v. General Elec. Co., 950 F.2d 816, 827 (1st

Case 3:09-cv-01564-JAG-BJM Document 21 Filed 06/08/10 Page 11 of 18

**Marisol Colón-Diaz v. Department of Education, et al.**  Page 11
Civil No. 09-1564 (JAG/BJM)
**REPORT AND RECOMMENDATION**

Cir. 1991). The First Circuit has analogized the ADA to the Title VII context in retaliation causes of action. Arocho v. Dep't of Labor & Human Res. of P.R., 218 F. Supp. 2d 145, 148 (D.P.R. 2002).

To state a claim for retaliation under the ADA, an employee must show (1) she engaged in protected conduct; (2) she suffered an adverse employment action; and (3) a causal connection between the two. See Dressler v. Daniel, 315 F.3d 75, 78 (1st Cir. 2003); see also Soileau v. Guilford of Me., 105 F.3d 12, 13 (1st Cir. 1997) (applying Title VII retaliation standard to ADA retaliation suit). For the second element, not every action is sufficiently adverse; rather, the action must be materially adverse, meaning it well might have dissuaded a reasonable employee from making or supporting a charge of discrimination. Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 57 (2006) (Title VII); see Carmona-Rivera v. Puerto Rico, 464 F.3d 14, 19-20 (1st Cir. 2006) (applying Burlington standard to ADA retaliation claim). The third element, causation, can be shown through direct evidence, see Brasslet v. Cota, 761 F.2d 827, 846-47 (1st Cir. 1985), or through very close temporal proximity between an employer's knowledge of the protected activity and the adverse employment action. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001); Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 224 (1st Cir. 2007) (in Title VII retaliation suit, finding two months is sufficiently close). See also Soileau, 105 F.3d at 16-17 (causation element requires that the alleged retaliator have actual knowledge of the protected activity).

Colón's complaint alleges that she filed internal administrative complaints with the Department in January, February, and April 2007, reporting a hostile work environment and disability discrimination. These internal complaints constitute protected conduct under the ADA. See Colón v. San Juan Marriott Resort and Stellaris Casino, 600 F. Supp. 2d 295, 315 (D.P.R. 2008). Moreover, Colón's allegation that she filed a discrimination charge with the EEOC in early November 2007 clearly satisfies the literal language of the statute and thus the first element of the claim. The complaint further alleges that after the internal complaints were filed, plaintiff's supervisors began persecuting her and subjecting her to increasing scrutiny and monitoring, that

Hernández added new requirements in an August 2007 memorandum, and that Hernández held the October 2007 meeting at which she distributed the Letter. The complaint also alleges that in the days after Colón filed the EEOC charge, Hernández and Gonzalez added other new and unreasonable tasks not inherent to Colón's position, and that by December 2007 Colón alone was required to prepare daily reports of her tasks. She alleges that her supervisors then took away her main job functions while subjecting her to isolation and humiliation with regard to her coworkers. I find that these allegations are sufficient to plead materially adverse employment actions. As to the third element, causation, the allegations show the requisite temporal proximity between plaintiff's internal complaints and her filing of the EEOC charge and the adverse actions that followed those activities. While Colón's complaint nowhere expressly alleges that her supervisors knew she filed the EEOC charge or when they knew, Hernández's knowledge can be inferred from Colón's allegation that in another internal complaint, filed on December 3, 2007, Colón "advis[ed] the Department that Hernández has taken reprisals against the plaintiff after the filing of the complaints." (Docket No. 1, ¶ 43). Therefore, I find that Colón's complaint sufficiently alleges causation and thus that the complaint states a plausible claim for retaliation under the ADA.

Colón has also stated a claim for retaliation under Puerto Rico law. Law 115 provides, "No employer may discharge, threaten, or discriminate against an employee regarding the terms, conditions, compensation, location, benefits or privileges of the employment" as retaliation for engaging in certain protected activities. 29 L.P.R.A. § 194a. An employee must establish that she engaged in activity protected under Law 115 and then suffered discrimination at work. Uphoff Figueroa v. Alejandro, 597 F.3d 423, 433 (1st Cir. 2010) (citing Vélez v. Janssen Ortho, LLC, 467 F.3d 802, 809 (1st Cir. 2006); MVM Inc. v. Rodríguez, 568 F. Supp. 2d 158, 176-77 (D.P.R. 2008)). However, while filing an EEOC charge qualifies as a protected activity, Law 115 does not prohibit retaliation in response to internal complaints. Cabrera v. Sears, Roebuck de P.R., Inc., 2009 WL 2461688, at *9 (D.P.R. Aug. 10, 2009) (citing Hoyos v. Telecorp Commc'ns, 405 F. Supp. 2d 199, 207 (D.P.R. 2005)). Therefore, I find that Colón's complaint states a claim for retaliation under Law

115, although her Law 115 cause of action covers only the damages she incurred in retaliation for the filing of the November 2007 EEOC complaint.

### C. Defamation and Invasion of Privacy Under Article 1802

Colón also seeks damages under Article 1802 based on her emotional suffering and the harm to her reputation resulting from defamation and invasion of privacy.[5] (Docket No. 1, ¶ 72). Her complaint alleges that at an October 2007 meeting of the Center's employees (except Colón), Hernández "intentionally, negligently and maliciously" circulated the Letter, which contained defamatory and false information about plaintiff's mental and physical health and her sex life, and also discussed confidential, private information about Colón's emotional and medical conditions. Colón claims that the Department ignored repeated notifications about the incident. (Id., ¶¶ 32-5, 67). She alleges that defendant's conduct aggravated her emotional condition, and that she suffered "extreme pain and anguish" as a result of defendant's conduct and was hospitalized. (Id., ¶¶ 53-4, 71). Colón also alleges that her status at work was seriously affected and other employees refused to talk to her. (Docket No. 1, ¶ 41).

To state a claim for damages under Article 1802, a plaintiff must establish three elements: (1) a negligent or wrongful act or omission; (2) proof of damages; and (3) a causal relationship between the damage and the defendant's act or omission. Dopp v. Fairfax Consultants, Ltd., 771 F. Supp. 494, 496 (D.P.R. 1990) (citing Hernández v. Fournier, 80 P.R.R. 94, 96-97 (1957)). I will analyze the sufficiency of each of plaintiff's two claims under Article 1802 in turn.

### *1. Invasion of Privacy*

The Puerto Rico Constitution protects an individual from an attack on his reputation by excessive publication of shocking or offensive private information or excessive publication of false

---

[5] As the complaint alleges that the Center supervisors who allegedly injured plaintiff were employees of defendant (Docket No. 1, ¶¶ 15, 18, 20), plaintiff impliedly brings her tort claims under Article 1803 of the Civil Code, which creates vicarious liability. 31 L.P.R.A. § 5142 ("The obligation imposed by [Article 1802] is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible.").

Case 3:09-cv-01564-JAG-BJM   Document 21   Filed 06/08/10   Page 14 of 18

**Marisol Colón-Diaz v. Department of Education, et al.**  Page 14
Civil No. 09-1564 (JAG/BJM)
**REPORT AND RECOMMENDATION**

information.  P.R. CONST. art. II, §§ 1, 8; López-Pacheco v. United States, 627 F. Supp. 1224, 1229 (D.P.R. 1986), *aff'd*, 815 F.2d 692 (1st Cir. 1987) (citations omitted).  These constitutional rights to dignity and privacy may be asserted via tort claims brought under Article 1802.  31 L.P.R.A. § 5141; Bonilla-Olmedo v. United States, 677 F. Supp. 2d 511, 516 (D.P.R. 2009) (citations omitted). Though what constitutes "excessive publication" has not been well-defined, this court has followed the Puerto Rico Supreme Court's indication "that publication must be sufficiently diffuse to threaten the individual's reputation."  López-Pacheco, 627 F. Supp. at 1229 (government investigation did not constitute an invasion of privacy where classified reports were disseminated to few government offices and viewed by few persons).

Here, Colón alleges that at the October 2007 meeting, Hernández discussed truthful but private information about Colón's emotional and medical conditions and circulated false information about Colón in the Letter, which was disseminated at a meeting of the Center's employees.  I find that the complaint adequately alleges excessive publication.  Unlike in López-Pacheco, the Letter was not classified and was allegedly viewed by all of Colón's coworkers.  Such dissemination is sufficiently diffuse to threaten Colón's reputation. Furthermore, I find that the complaint's allegation that Hernández discussed Colón's personal health information at that same meeting constitutes excessive publication of offensive private information.  In addition, Colón has alleged causation by stating that her emotional condition was adversely affected by Hernández's conduct and that she was hospitalized as a result.  Plaintiff has therefore stated a claim for invasion of privacy and is entitled to damages.

### *2. Defamation*

Defamation is a generic tort actionable under Article 1802.  Rivera v. DHL Global Forwarding, 536 F. Supp. 2d 148, 157 (D.P.R. 2008) (citing Ojeda v. El Vocero de P.R., Inc., 137 D.P.R. 315, 325-26 (1994)).  A defamation claim under Article 1802 requires that plaintiff prove (1) the publication of a defamatory statement, made either by fault or negligence, (2) damages, and (3) a causal relationship between them.  The publication element occurs when the defamatory statement

**Marisol Colón-Diaz v. Department of Education, et al.**                                                  Page 15
Civil No. 09-1564 (JAG/BJM)
**REPORT AND RECOMMENDATION**

is communicated to a third person.  Id. (citation omitted).

Under modern Puerto Rico defamation law, damages are not limited to the harm to the plaintiff's reputation.  "The Supreme Court of Puerto Rico has, indeed, recognized a cause of action under Section 1802, under principles of negligence, for damages suffered by those affected by defamatory communications. . . .  This type of action in negligence covers damages for mental suffering experienced by the person of whom the defamatory remarks were made."  Gierbolini Rosa v. Banco Popular de P.R., 930 F. Supp. 712, 717 (D.P.R. 1996), *aff'd*, 121 F.3d 695 (1st Cir. 1997) (citing Sociedad de Gananciales v. El Vocero de P.R., Inc., 135 D.P.R. 122, 127-28 (1994)); see also Perez v. El Vocero de P.R., 149 D.P.R. 427, 450 n.6 (1999) (damages in Article 1802 claims are not limited to the harm to the reputation).

Colón alleges that Hernández circulated the Letter to Colón's coworkers at the Center and that Hernández's conduct exacerbated Colón's emotional condition to the point where she required hospitalization.  These allegations are sufficient to state a claim for defamation under Article 1802 for emotional damages.  Moreover, Colón plausibly states a claim with regard to damage to her reputation, as causation can fairly be inferred from the publication of the Letter and the allegations that Colón's coworkers stopped speaking to her and that she lost status at work.  Colón is therefore entitled to damages on her defamation claim.

### D.     Damages Calculation

Colón requests damages of $500,000.00 for emotional distress pursuant to her retaliation claim and $1,000,000.00 for loss of reputation and emotional distress on her claim for defamation and invasion of privacy.  (Docket No. 1, ¶¶ 64, 72).

The First Circuit has found appropriate pain and suffering damages awards ranging from $37,500 to $705,000.  Sánchez v. Puerto Rico Oil Co., 37 F.3d 712, 723 (1st Cir. 1994) (upholding award of $37,500, in the absence of expert testimony, where plaintiff testified that job loss stripped him of livelihood and dignity and drove him into bankruptcy); Rodríguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 63 (1st Cir. 2005) (relying on Koster, affirming $250,000 award based on

plaintiff's own testimony where plaintiff testified that after job loss, her life changed drastically, she entered a deep depression that lasted "for quite some time," her marriage suffered, and she had trouble finding subsequent employment); Monteagudo v. Asociacion de Empleados del Estado Libre Asociado de P.R., 554 F.3d 164, 174-75 (1st Cir.2009) (upholding an award of $333,000 pursuant to Title VII and local Puerto Rico laws where plaintiff testified that she endured sexual harassment for several months, that she suffered from depression, and insomnia); Valentin-Almeyda v. Mun. of Aguadilla, 447 F.3d 85, 102-03 (1st Cir.2006) (upholding an award of $705,000 where plaintiff "suffered from various forms of emotional damages and mental anguish, including, inter alia, insomnia, anxiety, guilt, and depression"). See also Toro Cotto v. Liga Puertorriquena Contra El Cancer, 2007 WL 527661 (D.P.R. Feb. 14, 2007) (jury award of $400,000 in damages not excessive where ADA plaintiff whose medical condition was not accommodated testified that her condition deteriorated and she suffered from depression, anxiety, difficulty sleeping, loss of appetite, and family relationships suffered); Ojeda-Rodriguez v. Zayas, 666 F. Supp. 2d 240, 259-62 (D.P.R. 2009) (refusing request for *remittitur* on $350,000 award for defamation and due process violation, where plaintiff and her coworker testified that after job termination plaintiff was upset, lost weight, wouldn't eat or sleep, and suffered financial problems).

The testimony from plaintiff's witnesses demonstrates that Colón suffered damages including (1) non-economic damages such as emotional distress and mental anguish; (2) physical symptoms such as weight loss and panic attacks; and (3) harm to her good name and reputation. This testimony supports a grant of substantial compensatory damages.

Colón testified that after the retaliatory conduct against her started, she felt anxious, feared losing her job, suffered from disordered sleeping and eating as well as panic attacks, received psychiatric treatment and medication, and was hospitalized. She testified that the Letter changed her life: her friends and coworkers made fun of her because of it, and she felt crushed, ridiculed, and

**Marisol Colón-Diaz v. Department of Education, et al.**                                         Page 17
Civil No. 09-1564 (JAG/BJM)
**REPORT AND RECOMMENDATION**

humiliated.[6] Colón became physically distraught on the witness stand when asked to describe the Letter's impact on her. When the hostile, retaliatory conduct increased after the EEOC charge, she testified that her previous problems continued and that she also suffered severe weight loss, headaches, and breathing and digestive problems. Rivera provided corroborating testimony as to Colón's nervousness, weight loss, panic attacks, fear, and anxiety.

Colón also testified as to the extensive psychological and psychiatric treatment she received, including increasing dosages of medications as her work situation worsened and multiple hospitalizations for depression, anxiety, panic attacks, and suicidal thoughts. She testified that she still has weight and sleeping problems, does not feel mentally strong enough to seek new work, and continues to receive medical treatment, which Dr. Lladó testified she will continue to need for life. Dr. Lladó testified that Colón suffered severe emotional trauma due to the defamation and retaliation she suffered at work, still shows appreciable symptoms of depression and anxiety, and will require intensive treatment in order to make a full recovery, though she remains at a high risk of relapse.

Based on the evidence presented, and the legal precedent discussed above, I recommend that defendant Department of Education be ordered to pay the following amounts of damages:

(1) $150,000.00 in compensatory damages for emotional distress and loss of reputation corresponding to plaintiff's Article 1802 claims for defamation and invasion of privacy, and for plaintiff's ADA retaliation claim corresponding to the time period from January 27, 2007, when plaintiff's first internal complaint was filed, through November 5, 2007, when the EEOC charge was filed;

(2) $100,000.00 in compensatory damages for emotional distress corresponding to plaintiff's retaliation claims pursuant to the ADA and Law 115 for the time period following November 5, 2007 (when the EEOC claim was filed); and

---

[6] There was no testimony that the Letter was circulated outside the Center or that her reputation was affected beyond her circle of friends and her professional colleagues.

(3) $100,000.00 in doubling the damages awarded in the preceding paragraph pursuant to Law 115..

## CONCLUSION

For the reasons set forth above, I recommend that judgment be entered in favor of the plaintiff and against the Department in the total amount of **$350,000.00**.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(a) of the Local Rules of Court. Any objections to the same must be specific and must be filed with the Clerk of Court within fourteen (14) days. See Local Rule 72(d); 28 U.S.C. § 636(b)(1). Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4, 6 (1st Cir. 1986).

**IT IS SO RECOMMENDED**.

In San Juan, Puerto Rico, on this 8th day of June, 2010.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge